UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:26-cv-00615

| | |
|---|---|
| VICTOR COLE II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT and DEMAND FOR TRIAL** |
| | ) **BY JURY** |
| WHEELBLOCKERS TOWING & | ) |
| PARKING ENFORCEMENT INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, Victor Cole II ("Cole"), by and through counsel, brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and North Carolina statutory law claims for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.*, against Defendant WheelBlockers Towing & Parking Enforcement Inc. ("Defendant").

**NATURE OF COLE'S CLAIMS**

1.      Cole brings his FLSA overtime claim pursuant to 29 U.S.C. § 216(b) and seeks to recover unpaid overtime compensation and statutory penalties during the three-year period preceding the filing of this Complaint, which results from Defendant's policy and practice of failing to pay Cole an overtime premium rate of pay for all hours worked in excess of forty in a workweek.

2.      Cole's FLSA retaliation claim arises from Defendant's retaliatory alteration of his work schedule and other adverse employment actions taken because Cole asserted his rights under the FLSA pursuant to 29 U.S.C. § 215(a)(3).

3. Cole's NCWHA claim arises from Defendant's failure to pay Cole all earned wages on his regularly scheduled payday in workweeks where Cole worked fewer than forty hours. Specifically, Defendant routinely deducted thirty minutes per day for a meal period during which Cole was never relieved of his duties and was required to remain on duty in his company vehicle, rendering those periods compensable working time.

## THE PARTIES

4. Cole is an adult individual who is a resident of Charlotte, North Carolina.

5. Defendant is a domestic corporation with its principal place of business located at 401 Hawthorne Lane, Suite 110-192, Charlotte, North Carolina 28204.

6. At all relevant times during Cole's employment, Cole performed work on Defendant's behalf at locations throughout the Charlotte metropolitan area and surrounding regions.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for violations of the FLSA, 29 U.S.C. §§ 215(a)(3) and 216(b).

8. Cole's NCWHA claim is based on the law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of facts giving rise to Cole's FLSA claims.

9. This Court has personal jurisdiction because Defendant conducts business in Mecklenburg County, North Carolina, which is located within this judicial district.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant has substantial business contacts in this district and because the unlawful acts or omissions alleged herein occurred in Mecklenburg County, North Carolina.

2

<h1 style="text-align:center">COVERAGE ALLEGATIONS</h1>

11. Defendant is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. Defendant is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. Defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

14. Cole was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

15. Defendant is an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

16. Cole was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

<h2 style="text-align:center">COLE'S FACTUAL ALLEGATIONS</h2>

<h3 style="text-align:center">Cole's FLSA Claims</h3>

17. Defendant is a private parking enforcement company operating in the Charlotte, North Carolina metropolitan area and surrounding regions. Defendant's operations include enforcing private parking regulations, immobilizing non-compliant vehicles using wheel boots, towing, issuing citations, and managing parking for client properties.

18. Cole began his employment with Defendant in March 2023 and held the Driver/Parking Enforcement Officer role until his employment ended on June 28, 2026. Defendant classified Cole as a W-2 employee with all applicable taxes withheld from his paychecks.

19. Defendant paid Cole an hourly rate of $22.50 throughout his employment, on a weekly basis every Friday via direct deposit. At no time during his employment was Cole informed that he was exempt from the overtime requirements of the FLSA.

20. Cole's primary job duties consisted of enforcing private parking regulations throughout the Charlotte metropolitan area and surrounding regions. His responsibilities included patrolling parking lots and properties to identify violations, immobilizing non-compliant vehicles using wheel boots, issuing parking citations, documenting violations, and providing customer service during vehicle enforcement and release. Cole spent approximately 75% of his time in the field performing these manual enforcement duties. The remaining 25% of his work involved administrative tasks such as installing and maintaining parking signage at client properties, delivering parking passes to property management offices, picking up keys and mail for the business, and performing other operational errands as directed. Cole did not exercise any managerial or supervisory authority over other employees, nor did his position involve any administrative or executive discretion.

21. Defendant required Cole to work a regular schedule of Sunday through Friday from approximately 8:00 a.m. to 4:00 p.m., with Saturday as his scheduled day off. Cole regularly worked extended hours beyond this schedule. During his employment, Cole regularly worked 48 to 60 or more hours per workweek.

22. Defendant tracked employee hours through paper notebooks maintained at the office. Cole and other employees recorded their start and end times in a shared notebook at the

4

front desk each day. Defendant's owner, Timothy Furr ("Furr"), reviewed the employee timesheets each week and used them to process Cole's payroll through ADP.

23.     While Cole was on vacation during late March and early April, Defendant implemented an electronic clock-in and clock-out system in addition to the notebook described above. Cole was never added into the new system and continued to record his daily start and end times in Defendant's notebook, consistent with his and other employees' practice throughout his employment.

24.     Defendant, therefore, knew or should have known the hours Cole worked on Defendant's behalf.

25.     Despite Cole regularly working in excess of forty (40) hours per workweek, Defendant did not pay Cole an overtime premium for any hours he worked over forty in a workweek. Instead, Defendant paid Cole only his straight-time hourly rate of $22.50 for all hours worked, including hours in excess of forty per workweek.

26.     By way of example, during the pay period ending February 23, 2025, Cole's pay stub explicitly shows he worked 44.00 hours at $22.50 per hour with no overtime premium. During the pay period ending August 13, 2023, Cole worked 60.44 hours (evidenced by regular wages of $1,360.00 divided by $22.50), yet received no overtime compensation.

27.     The examples above are illustrative of Defendant's policy and practice of failing to compensate Cole for his overtime wages. Over the relevant course of his employment, Cole estimates that he worked at least 676.32 hours of unpaid overtime, including 161.55 overtime hours in 2023 (August through December), 311.11 overtime hours in 2024, 181.07 overtime hours in 2025, and 22.59 overtime hours in 2026 (January through March). The total number of unpaid overtime hours is subject to change as discussed below.

28. In certain workweeks, Defendant's practice of deducting thirty minutes daily for a meal break Cole was not relieved from duty during caused Defendant's recorded hours to understate Cole's actual hours worked. In those workweeks, Cole's recorded hours as reflected on his time sheet and pay stub totaled fewer than forty (40). By way of example, during the workweek ending 1/21/2024, Cole's time sheet reflects 39.60 hours worked, but Cole's actual hours worked that week, accounting for the five improperly deducted thirty-minute meal breaks, totaled 42.10 hours.

29. Defendant also occasionally paid Cole a discretionary bonus of $50.00 or $100.00 on certain pay periods. These discretionary after-the-fact bonus payments were applied inconsistently across pay periods and did not satisfy Defendant's obligation to pay Cole an overtime premium of one and one-half times his regular rate of pay for all hours worked in excess of forty in a workweek.

30. Defendant's violation of the FLSA was willful. During Cole's employment, Defendant's ownership explicitly discussed converting employees to independent contractor status under 1099 classification. Specifically, Defendant's owner stated: "I give you a 50 cent raise and we're gonna go to 10.99." This statement demonstrates that Defendant was fully aware of its wage and hour obligations and was actively seeking to evade them.

**Cole's NCWHA Claims**

31. Throughout Cole's employment, Defendant routinely deducted a thirty-minute meal break from Cole's hours worked each day, even though Cole was required to work through those periods and remain on duty and available for work. Cole spent his entire workday in his company vehicle patrolling parking lots and properties. Cole never left his vehicle for an uninterrupted meal break. When Cole did eat, he consumed food while continuing to drive and

monitor properties. Cole remained on duty and subject to being called to respond to parking violations or customer issues at any time during the designated lunch period.

32. Defendant's meal break deduction practice was also inconsistent and arbitrary: some pay periods included the thirty-minute deduction while others did not. Defendant maintained no formal meal break policy.

33. In workweeks where Cole worked fewer than forty (40) hours, Defendant's routine deduction of the thirty-minute meal break resulted in Defendant failing to pay Cole for all hours he actually worked and was on duty. In those sub-forty-hour workweeks, Cole's compensable time exceeded the number of hours for which he was paid, yet Defendant failed to pay Cole for those unpaid hours on his regularly scheduled payday.

**Cole's FLSA Retaliation Claim**

34. On or about March 18, 2026, Cole, through counsel, sent Defendant a demand letter asserting his rights under the FLSA and putting Defendant on notice of his claims for unpaid overtime compensation.

35. On or about March 24, 2026, the same day Defendant received and responded to Cole's demand letter asserting his FLSA rights, Defendant materially altered Cole's work schedule, reducing his workdays from six to five and changing his days off without explanation or advance notice.

36. Upon information and belief, Defendant also took steps to remove Cole from company insurance in a manner designed to affect his eligibility to work, and removed the day-shift workers' time-tracking notebooks from the office after the demand letter was served.

37. Defendant took these adverse actions against Cole because Cole asserted his rights under the FLSA.

7

## COUNT I
### (Violation of FLSA – Unpaid Overtime)

38.	Cole realleges and incorporates by this reference all the paragraphs above in the Complaint as though fully set forth herein.

39.	Defendant violated the FLSA by failing to pay Cole an overtime premium rate when he worked over forty (40) hours in individual workweeks.

40.	Cole was not exempt from the overtime provisions of the FLSA. His job duties consisted of manual enforcement work, including patrolling parking lots and booting vehicles, and do not satisfy the requirements for any FLSA exemption.

41.	Defendant directed Cole to work, and he did work, over forty (40) hours in one or more individual workweeks.

42.	Defendant paid Cole only his straight-time hourly rate of $22.50 for all hours worked and no overtime compensation.

43.	Under 29 C.F.R. § 778.315, an employer must compensate an employee at this regular rate for all non-overtime hours worked in a workweek before calculating the overtime premium owed for hours worked in excess of forty (40). In workweeks where Defendant's improper meal break deductions caused Cole's actual hours worked to exceed forty (40), notwithstanding that his recorded hours fell below forty (40), Defendant failed to pay Cole his full straight-time rate for all hours worked up to forty (40) and failed to pay the overtime premium required for hours worked in excess of forty (40), in violation of the FLSA and 29 C.F.R. § 778.315.

44.	As a result of Defendant's conduct alleged above, Cole is owed unpaid wages calculated as follows: (a) for workweeks in which Cole's recorded hours exceeded forty, the overtime premium of one and one-half times his rate of $22.50 per hour, or $11.25 per hour, for

each hour worked in excess of forty (40); (b) for workweeks in which Cole's recorded hours were forty or fewer but his actual hours worked, including the improperly deducted meal breaks, exceeded forty (40), his full straight-time rate of $22.50 per hour for each unpaid hour worked up to forty (40), plus the overtime premium of $11.25 per hour for each hour worked in excess of forty (40); and (c) liquidated damages in an amount equal to the sum of (a) and (b), pursuant to 29 U.S.C. § 216(b).

45.     The precise number of unpaid overtime hours, including the extent to which Defendant's improper meal break deductions caused Cole's actual hours worked to exceed forty (40) in any given workweek, is reflected in Defendant's payroll, timekeeping, and ADP records, which are in Defendant's exclusive possession, custody, and control. Where an employer's records are inaccurate or inadequate, an employee need only produce sufficient evidence to show the amount and extent of unpaid work as a matter of just and reasonable inference, and the burden then shifts to the employer to negate that inference or come forward with evidence of the precise amount of work performed. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). Based on Cole's recollection and his contemporaneous entries in Defendant's own timekeeping notebook, described in paragraph 22 above, Cole estimates the total amount of unpaid overtime hours to be no less than the amount alleged in paragraph 27, and Cole reserves the right to amend that amount upon Defendant's production of its complete payroll and timekeeping records.

46.     Defendant's violations of the FLSA were willful.


## COUNT II
### (Violation of FLSA – Retaliation)

47.     Cole realleges and incorporates by this reference all the paragraphs above in the Complaint as though fully set forth herein.

9

48.     The retaliation provision of the FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

49.     Cole engaged in protected activity by asserting his rights under the FLSA and causing a complaint to be instituted against Defendant regarding its unlawful wage and hour practices. *Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428 (4th Cir. 2012).

50.     Defendant materially altered Cole's work schedule on or about March 24, 2026, reducing his workdays from six to five and changing his days off without explanation or advance notice, in retaliation for Cole's assertion of his FLSA rights.

51.     Upon information and belief, Defendant also took steps to remove Cole from company insurance and removed the day-shift workers' time-tracking notebooks from the office in further retaliation for Cole's protected activity.

52.     As a proximate and foreseeable result of Defendant's unlawful conduct, Cole has suffered damages including lost wages and benefits, and is entitled to attorneys' fees and costs.

53.     Defendant's actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Cole's rights.

<u>COUNT III</u>
**(Violation of NCWHA – Straight-Time Wages)**

54.     Cole realleges and incorporates by this reference all the paragraphs above in the Complaint as though fully set forth herein.

55. This Count arises from Defendant's policy and practice of failing to pay Cole all earned wages on his regularly scheduled payday in workweeks where Cole worked fewer than forty (40) hours.

56. Throughout Cole's employment, Defendant routinely deducted thirty minutes per day from Cole's compensable work time for a purported meal period. Cole was never relieved of his duties during these designated periods. Cole remained in his company vehicle, continued patrolling properties, and was subject to immediate call to respond to violations or customer issues throughout the designated lunch period.

57. Because Cole was never completely relieved from duty during the designated meal period, those thirty-minute periods constituted compensable working time under 29 C.F.R. § 785.19 for which Defendant was required to pay Cole.

58. In workweeks where Cole's total actual hours worked, including the improperly deducted meal period time, were fewer than forty (40), Defendant failed to pay Cole all wages earned for those hours on his regularly scheduled payday in violation of the NCWHA, N.C. Gen. Stat. § 95-25.1 *et seq.*

59. Defendant's failure to pay Cole all wages earned for hours worked, in violation of N.C. Gen. Stat. § 95-25.6, entitles Cole to liquidated damages in an amount equal to the unpaid wages owed, pursuant to N.C. Gen. Stat. § 95-25.22(a1), unless Defendant establishes that its conduct was in good faith and that it had reasonable grounds for believing its conduct complied with the NCWHA.

60. Defendant cannot establish good faith or reasonable grounds for believing its conduct complied with the NCWHA. Defendant maintained no formal meal break policy, applied its thirty-minute deduction inconsistently and arbitrarily across pay periods, and made no effort to

verify whether Cole was actually relieved of duty before deducting time from his compensable hours.

## **PRAYER FOR RELIEF**

WHEREFORE, Cole demands the following relief:

a. An Order pursuant to Section 216(b) of the FLSA finding Defendant liable for unpaid overtime wages due to Cole and for liquidated damages equal in amount to the unpaid compensation found due to Cole;

b. An Order pursuant to Section 215(a)(3) of the FLSA finding Defendant unlawfully retaliated against Cole entitling Cole to recover lost wages and benefits, liquidated damages equal in amount of Cole's lost wages and benefits, and compensatory damages;

c. An Order pursuant to the NCWHA finding Defendant liable for unpaid regular wages due to Cole and for liquidated damages equal in amount to the unpaid compensation found due to Cole;

d. An Order awarding the costs of this action;

e. An Order awarding reasonable attorneys' fees;

f. An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

g. An Order granting such other and further relief as may be necessary and appropriate.

## JURY DEMAND

Cole demands a trial by jury for all issues of fact.

Dated: July 31, 2026

Respectfully submitted,

/s/ Trevor C. Williams
Philip J. Gibbons, Jr., NCSB #50276
Trevor C. Williams, NCSB #65153
**GIBBONS LAW GROUP, PLLC**
10801 Johnston Road, Suite 211
Charlotte, North Carolina 28226
Telephone: (704) 612-0038
E-Mail: phil@gibbonslg.com
　　　　 trevor@gibbonslg.com

*Attorneys for Plaintiff*